UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ANDRE LAMAR JACKSON,

        Petitioner,

v.                                          Case Number: 08-cv-13571
                                            HON. AVERN COHN

BLAINE C. LAFLER,

        Respondent.

_____/

**MEMORANDUM AND ORDER**
**DENYING PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE**
**A CERTIFICATE OF APPEALABILITY**

### I.  Introduction

This is a habeas case under 28 U.S.C. § 2254.  Petitioner Andre Lamar Jackson ("Petitioner") is a state prisoner who is serving a life sentence for two counts of first-degree murder, two counts of felony murder, and one count of felony firearm following a jury trial in the Wayne County Circuit Court.  In his *pro se* petition, Petitioner raises several claims, including sufficiency of the evidence, evidentiary errors, ineffective assistance of trial counsel, and prosecutorial misconduct.  Respondent, through the Michigan Attorney General's office, argues that the petition should be denied because Petitioner's claims are either unexhausted, procedurally defaulted, or lack merit.  For the reasons which follow, the petition will be denied for lack of merit.  The Court also will decline to issue a certificate of appealability.

### II.  Facts and Procedural History

Petitioner's convictions arose from an incident on October 7, 2001.  The

prosecution's theory was that Petitioner shot and killed Marcalan Dalton and Rodney Ross over a drug debt and also stole jewelry Dalton was wearing. The defense denied the allegations. Trial testimony revealed the following.

Dalton's wife, Angela, testified that Dalton left the house with Ross, about 7:30 p.m., on the day in question. She identified two of the rings her husband was wearing when he left.

Algina Vanover, the grandmother of some of Dalton's children, testified that Dalton and Ross came over to her house around 9:45 p.m. that night. She told Dalton that Petitioner had called her house looking for him. Dalton then called Petitioner. Afterward, he told her he was going to Petitioner's house to pick up his money.

Zamanda Allie-El, Dalton's brother-in-law, saw Dalton that evening. Dalton told him he was going to Petitioner's house to get his money. Allie-El said Ross was with Dalton.

Alicia Bishop, Dalton's girlfriend and Vanover's daughter, testified that she and Dalton had been living together for about three years and had two children together. She said Dalton called her around 10:00 p.m., that night, and told her he was going to Petitioner's house to pick up some money. He said he would be home in about one hour. Bishop never heard from him again.

Amy Jackson, Petitioner's sister, testified that he had been living with her during the time of the incident. She said she saw him asleep in the basement on the morning of October 8, but when she returned that evening, he was gone and so were his clothes. On cross-examination, she testified that Petitioner was unhappy that her lesbian lover had been living with them. He told her he was moving out. She also said, on prior

2

occasions, Petitioner moved out without telling her.  She acknowledged that she was interviewed by Sergeant James Fleming about the homicide.  She said she told him Petitioner did not say why he was leaving and that they did not argue that night.

The prosecution recalled Vanover.  She said she called Petitioner's house on October 8, looking for Dalton.  She said a woman answered, identified herself as Amy Jackson, and told her Dalton, Ross, and Petitioner left together.

Sergeant James Fleming and Officer Michael Choukourian both testified that they responded to a vacant residence on October 11.  Dalton's car was parked in front of the house.  Both Dalton and Ross were in the car and both were dead.

Sergeant Fleming testified that he interviewed Amy Jackson two or three times. She never mentioned that Petitioner left her home because of her companion.

Sergeant Fleming also testified that he interviewed Petitioner on October 23, 2001, about twenty minutes after his arrest.  After Petitioner was given his *Miranda*[1] rights, he indicated he was willing to speak to the Sergeant but declined to sign the form as well as take a polygraph test.  Petitioner then told Sergeant Fleming that he saw Dalton about two weeks before the incident, when Dalton came by with Ross to pick up the money he owed him for drugs.  Petitioner said he called Dalton several times to tell him that he had the money.  He said he left his house that night but did not take any clothes with him.  He had been getting high on ecstasy and cocaine and had argued with sister.  He said he was working as a male prostitute to pay for his drugs and had AIDS.  He said he talked to Dalton everyday but had not called him since he paid him.

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Petitioner also told Sergeant Fleming that he had blackouts and did not remember things.

Two days after Petitioner was arrested, the police retrieved two rings from a pawn shop, along with the pawn ticket. The ticket was dated October 11, 2001, four days after Dalton's disappearance. It was signed Andre Lamar Jackson, with his sister's address on it. It showed a payment of fifty dollars for the rings.

One of the employees from the pawn shop testified that the customer is required to place a right thumbprint on the pawn ticket. The police confirmed Petitioner's thumbprint on the ticket.

The rings were examined for DNA. It was determined that Petitioner's profile matched.

Dr. Boguslaw Pietak performed the autopsies on Dalton and Ross. He testified that Dalton died from a single close-range gunshot wound to the right cheek. Ross died from a single contact gunshot wound to the back of the head. The murder weapon was not recovered.

The jury found Petitioner guilty. He was sentenced to life in prison for both first-degree murder convictions, life in prison for both felony-murder convictions, and two years for the felony-firearm conviction.

Petitioner filed his direct appeal with the Court of Appeals, raising the following six claims: insufficient evidence, trial court error in denying his motion to suppress his statement to the police, trial court error in admitting a witness' prior inconsistent statement for impeachment purposes, trial counsel was ineffective, prosecutorial

misconduct, and double jeopardy.  The Court of Appeals, in a 2-1 decision,[2] affirmed his

convictions, but agreed with Petitioner on his double jeopardy claim, and vacated his

first-degree and felony-murder sentences and remanded to the trial court for entry of an

amended judgment of sentence to clarify that defendant's convictions were for two

counts of first-degree murder supported by two theories-first-degree premeditated

murder and first-degree felony-murder involving larceny.  *People v. Jackson*, No.

247079, 2004 WL 1533873 (Mich.Ct. App. July 8, 2004).

Petitioner then filed an application for leave to appeal with the Michigan Supreme

Court, raising the same claims raised in the Court of Appeals minus the double jeopardy

claim.  The Supreme Court denied his application on May 31, 2006.  *People v. Jackson*,

475 Mich. 874 (2006) (Table).

Petitioner filed a post-conviction motion with the trial court, which was denied.

*People v. Jackson*, No. 01-12804-01 (Wayne County Circuit Court, Aug. 15, 2007).  His

delayed application for leave to appeal with the Court of Appeals was denied on

January 18, 2008, *People v. Jackson*, No. 280959 (Mich. Ct. App. Jan. 18, 2008), and,

on July 29, 2008, the Michigan Supreme Court also denied his application for leave to

appeal.  *People v. Jackson*, 482 Mich. 892 (2008).

Petitioner then filed the instant petition.

### III.  Discussion

### A.  Standard of Review

---

[2]The dissent believed that Petitioner was entitled to a new trial based on
ineffective assistance of counsel and prosecutorial misconduct.  Even if the errors
pointed out are significant, they do not carry the day on habeas review.  As explained
*infra*, Petitioner is not entitled to relief on his claims.

5

Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citations omitted).

Recently, the Supreme Court held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, --- U.S. ---, ---, 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the

6

state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Section 2254(d) does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, but rather, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)).

Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, --- U.S. at ---, 131 S.Ct. at 786-87.

**B.  Procedural Default**

Respondent argues that Petitioner's prosecutorial-misconduct and ineffective-assistance-of-counsel claims are barred by the procedural-default rule. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Putting aside whether the claims are in fact procedurally defaulted, "[j]udicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner,

7

whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.  Here, the interests of judicial economy are best served by addressing the merits of Petitioner's procedurally-defaulted claims.

### C.  Exhaustion

Respondent also argues that the petition should be dismissed because Petitioner failed to exhaust his prosecutorial-misconduct claim.  Although a prisoner filing a habeas petition under 28 U.S.C. § 2254 must first exhaust all state remedies, s*ee O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999), it is not a jurisdictional prerequisite for bringing a habeas petition.  *See Granberry v. Greer*, 481 U.S. 129, 134-35 (1987).  An unexhausted claim may be addressed if pursuit of a state-court remedy would be futile, *see Witzke v. Withrow*, 702 F.Supp. 1338, 1348 (W.D. Mich. 1988), or if the unexhausted claim is meritless such that addressing it would be efficient and not offend federal-state comity.  *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *see also* 28 U.S.C. § 2254(b)(2) (habeas petition may be denied on the merits despite the failure to exhaust state court remedies).  Again, the interests of justice are best served by ruling on the petition because Petitioner no longer has any state-court remedies available, and, as will be explained, the claim lacks merit.

### D.  Petitioner's Claims

#### 1.  Claim I–Insufficiency of the Evidence

Petitioner argues that there was insufficient evidence presented connecting him to the crimes.

"[T]he Due Process Clause protects the accused against conviction except upon

proof beyond a reasonable doubt of every fact necessary to constitute the crime with

which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). "Two layers of

deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*,

619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th

Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and

exhibits in the light most favorable to the prosecution, *any rational trier of fact* could

have found the essential elements of the crime beyond a reasonable doubt." *Brown*,

567 F.3d at 205 (emphasis in the original) (citing *Jackson v. Virginia*, 443 U.S. 307, 319

(1979)). Second, if the Court were "to conclude that a rational trier of fact could *not*

have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court]

must still defer to the state appellate court's sufficiency determination as long as it is not

unreasonable." *Id.* (emphasis in the original) (citing 28 U.S.C. § 2254). "A reviewing

court does not reweigh the evidence or redetermine the credibility of the witnesses

whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319

F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983));

*see also McDaniel v. Brown*, --- U.S. ---, 130 S.Ct. 665, 673 (2010) (quoting *Jackson*,

443 U.S. at 326) ("A reviewing court 'faced with a record of historical facts that supports

conflicting inferences must presume—even if it does not affirmatively appear in the

record—that the trier of fact resolved any such conflicts in favor of the prosecution, and

must defer to that resolution.'").

     Under Michigan law, the elements of first-degree murder are: (1) the killing of a

human being;(2) with an intent to kill, to do great bodily harm, or to create a high risk of

death or great bodily harm with knowledge that death or great bodily harm is the

9

probable result, MICH. COMP. LAWS § 750.316(1)(a); or (3) committed in the course of an enumerated felony, such as larceny, MICH. COMP. LAWS § 750.316(1)(b).  *People v. Bowman*, 254 Mich.App. 142, 151 (2002).

In order to obtain a felony-firearm conviction, the prosecution must prove that (1) defendant was in possession of a firearm (2) during the commission of, or the attempt to commit, a felony.  MICH. COMP. LAWS § 750.227b; *People v. Avant*, 235 Mich.App. 499, 505 (1999).  Possession of the firearm may be actual or constructive and can be proven by circumstantial evidence.  *People v. Burgenmeyer*, 461 Mich. 431, 437 (2000).

The record establishes that there was sufficient evidence presented to establish Petitioner's guilt.  The Michigan Court of Appeals, although not specifically citing *Jackson*, clearly applied the *Jackson* standard.  Regarding motive and opportunity, the Michigan Court of Appeals found the evidence was sufficient, explaining:

> Defendant and victim, Marcalan Dalton, were friends before this incident. Defendant had owed Dalton money and had called Dalton's house numerous times in the two weeks before the incident occurred to let Dalton know that he had the money to pay him. On the night of Dalton's disappearance, he stated to numerous people that he and victim, Rodney Ross, were going to defendant's house to pick up money. Neither Dalton nor Ross was ever seen alive again after that night. Defendant admitted that he owed Dalton money for a drug-related debt and that Dalton had stopped by the night of October 7, 2001, to pick up the money. Although defendant and Dalton were supposedly friends, defendant, who had been calling Dalton on a regular basis, never called Dalton's house again after the night of October 7, 2001. On October 8, 2001, the next day, defendant took all his belongings and moved out of his sister's house and had not contacted any family or friends since then. Furthermore, defendant's sister told a member of Dalton's family that defendant had left with Ross and Dalton on the night of October 7, 2001. Upon arrest, defendant told the police that he had been staying at his children's mother's house; however, this statement was contradicted at trial.  Defendant also told the police that he had blackouts, that he gets high on ecstasy and cocaine, that he is a male prostitute, and that he has AIDS.

> We conclude that the above evidence was sufficient to support defendant's convictions.  The evidence shows that defendant had a motive to kill

Dalton because he owed him a substantial amount of money for a drug-related debt. Furthermore, defendant admitted to "getting high on ecstasy and cocaine," thus, providing further motive to kill Dalton, i.e., to obtain money to buy more drugs. The evidence also shows that defendant had an opportunity to commit the murders since he admitted that Dalton and Ross came over the night of October 7, 2001.

*Jackson*, 2004 WL 1533873 at *1.

Regarding willfulness and premeditation, the Michigan Court of Appeals had this

to say:

Defendant had been trying to contact Dalton for two weeks. He finally spoke with Dalton on October 7, 2001, and told Dalton that he had money for him. Dalton went to defendant's place to pick the money up and never returned. Dalton's and Ross' bodies were found four days later inside Dalton's truck. Ross was located in the front passenger side of the vehicle with a contact gunshot wound to the back of his head. Dalton's body was located in the rear passenger side of the vehicle with a close range gunshot wound to the right cheek. Dalton's leg and jeans were muddy, indicating that his body had been moved. Based on this evidence, a reasonable jury could infer that defendant had planned these murders before they occurred and that defendant had been calling Dalton to lure him over to pick up his money. Furthermore, based on the location of the gunshot wounds, a reasonable jury could infer that this was a very purposeful and calculated act. First, defendant would have to bring the gun with him, then pull the gun out, place it to the back of Ross' head and finally, pull the trigger. Not only did defendant pull the trigger to shoot Ross, but he pulled the trigger once more to shoot Dalton. In that time frame, defendant would have had ample time to think again about the nature and consequences of his actions. Based on the evidence, the jury could have easily inferred that defendant's plan was to lure Dalton over and never allow Dalton and Ross out of the car alive. Viewed in the light most favorable to the prosecution, we conclude that this evidence is more than sufficient to establish premeditation beyond a reasonable doubt.

*Id.* at *2.

Regarding whether the killings were committed during the course of a larceny,

the Michigan Court of Appeals explained the evidence was sufficient as follows:

Two days after defendant's arrest, the police located two of the rings that Dalton had been wearing on October 7, 2001, at Zeidman's Pawn Shop. According to the pawn slip, defendant pawned these two rings on October 11, 2001, at 8:46

11

a.m., in return for $50. Defendant's signature and fingerprints were located on the pawn slip, and defendant's DNA was found on one the rings confiscated from the pawn shop. This in itself would be enough, when viewed in the light most favorable to the prosecution, to establish beyond a reasonable doubt that defendant committed the murders in the course of a larceny.

*Id.*

Finally, as to felony-firearm, the Michigan Court of Appeals explained:

In order to obtain a felony-firearm conviction, the prosecution must prove that (1) defendant was in possession of a firearm (2) during the commission of, or the attempt to commit, a felony. MCL 750.227b; People v. Avant, 235 Mich.App 499, 505; 597 NW2d 864 (1999). Possession of the firearm may be actual or constructive and can be proven by circumstantial evidence. People v. Burgenmeyer, 461 Mich. 431, 437; 606 NW2d 645 (2000). Because the above evidence was sufficient to show that defendant committed the murders in the course of a larceny, and because a firearm was used to commit the murders, as evidenced by the gunshot wounds to Ross' and Dalton's heads, the above evidence, although circumstantial, is also sufficient to show that defendant was in possession of a firearm during the commission of a felony.

The Michigan Court of Appeals' determination of the facts, viewed in the light most favorable to the prosecution, is reasonable and not contrary to *Jackson*. As the Michigan Court of Appeals carefully explained, the evidence was sufficient from which a reasonable juror could conclude that Petitioner committed the murders during a larceny. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### 2. Claim II–Fourth Amendment Violation

Petitioner next claims that he is entitled to habeas relief because the trial court erred in failing to suppress his statement that was made after his illegal arrest. Petitioner cannot prevail on this claim. In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional

12

search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim. *Id.* at 481. In order for the rule of *Stone* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the present case must not have been frustrated by failure of that mechanism. *See Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (citing *Stone*, 428 U.S. at 494-95). If those two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error. *Gilbert v. Parke*, 763 F.2d 821, 824 (6th Cir. 1985).

Here, it is undisputed that Michigan has a state procedural mechanism which, in the abstract, presents a full opportunity to raise a Fourth Amendment claim before trial. Even before the Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, the Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures. *See People v. Margelis*, 217 Mich. 423 (1922). After *Mapp v. Ohio*, 367 U.S. 643 (1961), the Michigan courts have consistently acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment. *See People v. David*, 119 Mich. App. 289 (1982). Thus, it clear that Michigan affords criminal defendants a vehicle by which to raise Fourth Amendment challenges, habeas review is not available.

Moreover, Petitioner has not alleged any grounds for concluding that presentation of his Fourth Amendment claim was somehow frustrated because a failure of the state's mechanism. First, there appears to be no dispute that Petitioner was given *Miranda* warnings before he was questioned by Sergeant Fleming. Second,

13

Petitioner raised his present Fourth Amendment issue (suppression of statement as fruit

of an illegal arrest) in the trial court.  The trial court held an evidentiary hearing,

analyzed the evidence, and rejected Petitioner's claim.  Therefore, even if this Court

were to disagree with the determination of the trial court, that disagreement would be

insufficient to warrant habeas relief.  The Sixth Circuit has pointedly held that the

doctrine of *Stone* applies, even if the federal court deems the state-court determination

of the Fourth Amendment claim to have been in "egregious error."  *Gilbert*, 763 F.2d at

824.  Rather, to satisfy the second prong of *Stone*, Petitioner must allege facts showing

that the state corrective mechanism has somehow broken down.  Petitioner has failed to

do so.  Accordingly, he is not entitled to habeas relief on this claim.

### 3. Claim III–Improper Admission of Evidence

Petitioner next argues that he is entitled to habeas relief because the trial court

erred in admitting evidence of a witness' prior inconsistent statement.  Petitioner cannot

prevail on this claim because it is well-established that alleged trial court errors in the

application of state procedure or evidentiary law, particularly regarding the admissibility

of evidence, are generally not cognizable as grounds for federal habeas relief.  *Estelle*

*v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1354

(6th Cir. 1993); *see also Olsen v. McFaul*, 843 F.2d 918, 933 (6th Cir. 1988) (such

claims are almost always rejected as grounds for granting a writ of habeas corpus).

Instead, questions concerning the admissibility of evidence, as well as its probative or

prejudicial value, are properly left to the sound discretion of the trial court.  *Oliphant v.*

*Koehler*, 594 F.2d 547, 555 (6th Cir. 1979).

Petitioner has not alleged a constitutional violation arising from the admission of

14

the evidence in this case. For an evidentiary ruling to possibly violate due process, it must be so egregious that it results in a denial of fundamental fairness. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). The use of hearsay during Petitioner's trial does not rise to that level, and the admission of the evidence did not violate the Confrontation Clause because the witness was available for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 59, n.9 (2004).

Additionally, what is or is not hearsay evidence in a state-court trial is governed by state law. *See Johnson v. Renico*, 314 F. Supp. 2d 700, 705 (E.D. Mich. 2004) (internal citations omitted). The Michigan Court of Appeals determined, although "a close evidentiary issue," that it was proper to admit Vanover's statements to impeach Petitioner's sister's "denial of knowing or ever hearing of Ross and Dalton." *Jackson*, 2004 WL 1533873, at *4. A federal habeas court is bound by a state appellate court's ruling that certain testimony is not hearsay, because state law governs questions concerning the admissibility of evidence. *Johnson*, 314 F. Supp. 2d at 706. Petitioner's claim that the trial court violated his right to a fair trial when it admitted this statement into evidence raises only an error of state law that is noncognizable in federal habeas review. *See David v. Lavinge*, 190 F.Supp.2d 974, 981-82 (E.D. Mich. 2002). Petitioner is not entitled to habeas relief on his admission of evidence claim.

### 4. Claim IV–Ineffective Assistance of Counsel

In his fourth claim, Petitioner claims that trial counsel was ineffective for failing to object to the admission of evidence regarding his being a male prostitute, having AIDS, and refusing to take a polygraph test.

To show that he was denied the effective assistance of counsel under federal

15

constitutional standards, Petitioner must satisfy a two prong test.  First, Petitioner must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance.  *Id.*  In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy.  *Id.* at 689.  Second, Petitioner must show that such performance prejudiced his defense.  *Strickland*, 466 U.S. at 689.  To demonstrate prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Here, the Michigan Court of Appeals reasonably concluded that Petitioner failed to show either that counsel's failure to object was not trial strategy or that he was prejudiced.

Regarding counsel's failure to object to evidence that Petitioner was a prostitute and had AIDS, the Michigan Court of Appeals stated:

> There could be numerous reasons why defense counsel did not object to defendant's admission that he was a male prostitute and had AIDS. Defense counsel may not have wanted to draw further attention to the admission.  In any event, defendant has failed to show that he was prejudiced by the admission of this evidence. There is nothing in the record to indicate that the jury based its
> decision to convict defendant on the fact that he was a male prostitute and had AIDS.  Defendant has failed to show that a reasonable probability exists that the outcome of the proceedings would have been different had the above evidence been excluded.

16

*Jackson*, 2004 WL 1533873, at *5.

The Court agrees with this analysis and is hard pressed to find that trial counsel's failure to object to Petitioner's admission that he was a male prostitute and had AIDS denied him a fundamentally fair trial. Petitioner has failed to show that a reasonable probability exists that the outcome of the proceedings would have been different had the above evidence been excluded. Moreover, there is nothing in the record to indicate that the jury based its decision to convict Petitioner on the fact that he was a male prostitute and had AIDS.

In regard to trial counsel's failure to object to the testimony that Petitioner refused to take a polygraph examination, the Michigan Court of Appeals stated:

> Here, the officer in charge of the case made the references inadvertently during an explanation regarding defendant's refusal to sign his statement and regarding why the officer does not record or videotape his interviews. Although the officer made two references to defendant's refusal to take a polygraph examination, both references were brief, were made in response to legitimate questions posed to him, and were not made to bolster anyone's credibility. Furthermore, the references did not involve the admission of test results, but merely involved defendant's refusal to take the examination. As stated above, decisions regarding what evidence to present are presumed to be matters of trial strategy. Because the above references were inadvertent, brief, and did not involve polygraph examination results, defense counsel may have thought it more harmful than helpful to object to the references. Furthermore, defendant has failed to show that a reasonable probability exists that the outcome of the proceedings would have been different had the polygraph examination references been excluded.

*Jackson*, 2004 WL 1533873, at *5 (citations omitted).

The Michigan Court of Appeals' conclusion was a reasonable application of the prejudice prong of *Strickland*. While recognizing that "testimony concerning the result of a polygraph examination is not admissible at trial, " *Jackson,* 2004 WL 1533873, at *5

17

(citing *People v. Jones*, 468 Mich. 345, 355, (2003)), the court of appeals noted that references to a polygraph test do not always constitute error requiring reversal. *Id.* In *Hodge v. Hurley*, 426 F.3d 368, 385 (6th Cir. 2005), the Sixth Circuit recognized that "[d]ecisions not to object to inadmissible evidence already heard by the jury can in many cases be classified as part of a deliberate strategy to avoid calling the jury's attention to that evidence."

The record reveals that the references made by Sergeant Fleming regarding Petitioner's refusal to take a polygraph examination were brief and did not involve polygraph examination results. Because of that, trial counsel may have thought it more harmful than helpful to object to the references. Trial counsel's decision not to object was objectively reasonable and did not so prejudice Petitioner as to deny him a fair trial. Moreover, Petitioner cannot establish a reasonably probability that an objection to such testimony would have been sustained, and therefore, he cannot show that trial counsel was ineffective in this regard.

The Court agrees with Court of Appeals's determination that Petitioner "failed to show that a reasonable probability exists that the outcome of the proceedings would have been different had the polygraph examination references been excluded." *Id.* Accordingly, Petitioner is not entitled to habeas relief on his ineffective-assistance-of-counsel claims.

### 5.  Claim V–Prosecutorial Misconduct

Petitioner next argues that he was denied a fair trial because of repeated instances of prosecutorial misconduct during closing argument. He alleges that the prosecutor attacked defense counsel's honesty and integrity, shifted the burden of

18

proof, and misstated the evidence.  The Michigan Court of Appeals reviewed the claims

of prosecutorial misconduct for plain error and found none.  *Jackson*, 2004 WL

1533873, at *6-7.

On habeas review, claims of prosecutorial misconduct are reviewed deferentially.

*Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  To be cognizable, the misconduct

must have "'so infected the trial with unfairness as to make the resulting conviction a

denial of due process.'"  *Id.* (citation omitted).  Even if the prosecutor's conduct was

improper or even "universally condemned," *id.*, relief can be provided only if the

statements were so flagrant as to render the entire trial fundamentally unfair.  Once the

statement is found improper, four factors are considered in determining whether the

impropriety is flagrant: (1) the likelihood that the remarks would mislead the jury or

prejudice the accused, (2) whether the remarks were isolated or extensive, (3) whether

the remarks were deliberately or accidentally presented to the jury, and (4) whether

other evidence against the defendant was substantial.  *See Boyle v. Million*, 201 F.3d

711, 717 (6th Cir. 2000).  Under the AEDPA, this bar is heightened by the deference

given to the court of appeals's determination of Petitioner's prosecutorial-misconduct

claims.  *See Macias v. Makowski*, 291 F.3d 447, 453-54 (6th Cir. 2002) ("If this court

were hearing the case on direct appeal, we might have concluded that the prosecutor's

comments violated Macias's due process rights.  But this case is before us on a petition

for a writ of habeas corpus.  So the relevant question is not whether the state court's

decision was wrong, but whether it was an unreasonable application of clearly

established federal law.").

Here, the Michigan Court of Appeals found that the prosecutor's argument

19

properly addressed defense's theory, responded to counsel's arguments, and focused the jury's attention on the evidence presented.  Although the court of appeals concluded that the prosecutor did misstate the facts, as he claimed that Petitioner pawned Dalton's rings two days after Dalton's disappearance, when the trial testimony showed that Petitioner actually pawned the rings four days after Dalton's disappearance, it found that the isolated misstatement did not render Petitioner's trial fundamentally unfair. Moreover, the court of appeals noted that trial court's instructions regarding attorney argument not being evidence eliminated any prejudice flowing from the prosecutor's remarks.  That said, the prosecutor's statements were less than desirable.  If this case was not on habeas review, the Court may take a different view of the prosecutor's actions.  However, in the confines of habeas review, relief is not warranted.  Overall, the Michigan Court of Appeals's decision regarding Petitioner's prosecutorial-misconduct claims was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  Petitioner is not entitled to habeas relief on this claim.

## IV.  Conclusion

For the reasons stated above, Petitioner is not entitled to habeas relief on the claims raised in his petition.  Accordingly, the petition is DENIED.

Furthermore, reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed

further.  The Court therefore DECLINES to grant a certificate of appealability under 28

U.S.C. § 2253(c)(2).[3]  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

       SO ORDERED.


Dated:  June 9, 2011                 S/Avern Cohn
                                      AVERN COHN
                                        UNITED STATES DISTRICT JUDGE



I hereby certify that a copy of the foregoing document was mailed to Andre Jackson, 381114, Carson City Correctional Facility, 10522 Boyer Road, Carson City, MI 48811 and the attorneys of record on this date, June 9, 2011, by electronic and/or ordinary mail.


                                      S/Julie Owens
                                      Case Manager, (313) 234-5160

---

    [3]"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.